UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MIRLA "MILLIE" HERNANDEZ,

     Plaintiff,

v.                                                                 Case No.:


TECHNETICS GROUP LLC, and
ENPRO INDUSTRIES, INC.                        DEMAND FOR JURY TRIAL


     Defendants,

_____/

**COMPLAINT FOR**
**COMPENSATORY AND PUNITIVE DAMAGES**

Plaintiff, Mirla "Millie" Hernandez, by and through his undersigned counsel, sues Defendants, Technetics Group LLC, and EnPro Industries, Inc. and alleges as follows:

**NATURE OF THE CASE**

1.    This is a civil action for compensatory damages, punitive damages, other monetary relief, equitable relief, and attorney's fees, to redress unlawful discrimination in employment on the basis of race and/or color, in violation of (a) Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e-2 ("Title VII"); and (b) the Florida Civil Rights Act, sections 760.01-760.10, Florida Statutes ("FCRA"). As more particularly alleged herein, Plaintiff is entitled to the

1

remedies prescribed by the FCRA, Title VII, and the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. [1]

## JURISDICTION

2.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiff sues Defendant pursuant to a federal statute, 42 U.S.C. § 2000 e-2. The Court has supplemental jurisdiction over Plaintiff's state law (FCRA) claim, pursuant to 28 U.S.C. § 1367, as that claim is so related to a claim in the action within the Court's original jurisdiction (i.e., the Title VII claim), that it forms part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the violations took place at the Daytona FL location, and/or the acts and omissions giving rise to this action occurred, within the Middle District of Florida, specifically Volusia County, Florida.

## THE PARTIES

4.    Plaintiff, Mirla "Millie" Hernandez, ("Plaintiff" or "Hernandez") is, and at all times material, was, a citizen of the State of Florida.

---

[1] See 42 U.S.C.A. § 1981a (b)(2): "Exclusions from compensatory damages Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."

5.      Plaintiff is of Hispanic/Latinx ethnicity and was born in Cuba. Plaintiff also identifies a Gay woman. Therefore, she fits in several categories protected by Title VII and the FCRA.

6.      Defendant, Technetics Group LLC ("Defendant" and/or the "Technetics"), has a location at 305 Fentress Boulevard, Daytona Beach, FL 32114 USA.

## CONDITIONS PRECEDENT

7.      Fla. Stat. Ann. § 760.11 (4) provides, in pertinent part: "If the commission [Florida Commission on Human Relations, a/k/a the FCHR] determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992 [FCRA], the aggrieved person may…(a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction…" Fla. Stat. § 760.11 (8), in turn, provides: "If the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days after the filing of the complaint: (a) An aggrieved person may proceed under subsection (4) as if the commission determined that there was reasonable cause…"

8.      On or about May 9, 2025, Plaintiff dual-filed a charge of race, sex, and medical condition   as well as retaliation in violation of the FCRA and Title VII with the commission (FCHR) and the Equal Employment Opportunity

Commission (EEOC). The commission failed to determine whether there is reasonable cause on Plaintiff's complaint within 180 days after the filing of said complaint, and therefore, Plaintiff is entitled to proceed with the within civil action as if there had been a determination of reasonable cause.

9.      All other conditions precedent to the maintenance of this action have occurred and/or been met, or such conditions have been waived or excused.

**ALLEGATIONS COMMON TO ALL COUNTS**

10.     Mirla "Millie" Hernandez, began her employment with Technetics Group, LLC, c/o EnPro Industries, Inc. ("Defendant") on September 12th, 2022.

11.     EnPro Industries, Inc. is the sole owner of Technetics Group, LLC.

12.     Hernandez was hired as a "buyer" for the supply chain department, and she worked under the supervision of Charletta "Cece" Walker (role Supply Chain Supervisor, race - Black).

13.     Upon Hernandez beginning working for Defendant, it was clear that the supervisor was uninterested in providing complete training for Hernandez and appeared to be uninterested in interacting with her.

14.     Early in the course of Hernandez' employment, Hernandez repeatedly heard Supervisor and Lisa Brubaker (role - Buyer, race – White) making jokes at the expense of Jan Rodriguez (role – Buyer, ethnicity/race – Latino) who was referred to as "Dumb-dumb" by Supervisor and Brubaker.

4

15. Following the early phase of Hernandez's employment, she began to work from home.

16. Due to the Supervisor's ineffective training, Hernandez had many questions. When she reached out to the Supervisor for guidance, the Supervisor was irritable and critiqued her by saying that the Supervisor did not hire her to be a "button pusher." Hernandez understood this to mean that the Supervisor did not believe she was intelligent, similar to Supervisor's opinion of the other Latinx buyer in the department and evidently dissimilar to her opinion of Brubaker, the white comparator.

17. Plaintiff reported Supervisor's behavior to Lianne Torianyk in the Human Resources department of Respondent through their internal message system, Microsoft Teams. The Hernandez was told to disregard Supervisor's behavior because Supervisor was under a lot of pressure.

18. After Hernandez's report to HR, Supervisor's behavior towards Hernandez became more erratic leading to her reduced ability to fulfill expectations due to changes in mood and instruction.

19. In or around January of 2023, Defendant initiated a return to office policy beginning with two days a week in the office.

20.     In February, while in the office, Kimberly Wallace (role – Assistant Buyer, race – White) asked Hernandez if she was gay, Hernandez responded "yes" she is.

21.     Sometime thereafter, Supervisor was discussing politics in the office and the conversation made clear that Supervisor was aware of Hernandez's sexual orientation.

22.     In or around April of 2023, Supervisor became aware that Hernandez's romantic partner moved in with her which led to Supervisor further inquiring about her intimate relationship. She asked Hernandez if she was the man or a woman in the relationship noting that it seemed Hernandez's role in the household consisted of doing all the "bitch work." This statement was shocking and offensive to Hernandez.

23.     In or around May 2023 Jan Rodriguez (role – Buyer, ethnicity/race – Latino, nicknamed "Dumb-dumb" by Supervisor) left employment at Technetics Group LLC. In open conversations, Supervisor appeared to be concerned what Rodriguez would say about her in his exit interview and began making negative remarks about his work.

24.     Soon after Rodriguez departure, Supervisor's interactions with Hernandez dramatically changed for the worse, with Supervisor reacting as if she was being bothered when Hernandez would ask for information. Hernandez felt

as though Supervisor was searching for any reason to get Hernandez in trouble during their interactions.

25. In or around June 2023, Hernandez began losing sensation in her arms and legs, began experiencing muscle spasms, and loss of muscle mass. This substantially limited my ability to utilize computers and other major life activities. Hernandez went to a medical appointment which revealed that her muscles were not functioning as they should. Hernandez informed Supervisor of the medical findings.

26. Supervisor and the others in the department began treating Hernandez as an outcast and ceased speaking or communicating with her unless absolutely necessary.

27. Hernandez again discussed the issues with Technetics Group LLC's HR department, indicating a fear of being terminated in relation to her medical condition.

28. HR addressed the issue to Supervisor's Supervisor, Tony Eldridge (role – Supply Chain Manager, race – White) who thereafter discussed the issue with Supervisor. After this discussion, Supervisor moved her workstation from the room she previously shared with Hernandez to another location and would not make eye contact with Hernandez.

29.    Soon thereafter Kimberly Wallace (role – Assistant Buyer, race – White) began receiving extensive training from Supervisor to become a buyer. Supervisor also began having Hernandez train Wallace on some of Hernandez's accounts.

30.    On July 19, 2023, Hernandez received her first poor work performance review and was put on a performance improvement plan ("PIP"). This was the first time Hernandez received any indication her performance was not satisfactory. Hernandez refused to sign the PIP and added her notes indicating the areas where she factually disagreed with the assessment. Hernandez further informed respondent's HR department that she believed the PIP was retaliation for raising the issues about Supervisor's behaviors.

31.    On or around the time immediately following the PIP, Defendant posted a job requisition for a new Buyer, Hernandez's role.

32.    On or around the beginning of August, Hernandez made an error in placing an order. The error caused a slight delay in product being delivered, however, such delays were common due to the vendor who was supplying the product. Other buyers had made the same type of error and the buyers were not subjected to punishment for their similar errors.

33.    Soon after this time, Hernandez heard Brubaker (role – Buyer, race – White) say to Wallace (role – Assistant Buyer, race – White) "I can't wait for them

to get rid of her" referring to Hernandez. Wallace replied with "Just give it time, it will happen." Furthermore, Supervisor began conducting team meetings and failing to invite Hernandez to the team meetings or even inform her of them.

34.    In or around August of 2023, Hernandez requested FMLA paperwork as Hernandez needed to take leave due to her medical condition. Hernandez was sent the information by Respondent's HR Department.

35.    On August 21, 2023, Hernandez became aware that Technetics had hired a new Buyer to start the following Monday, August 28, 2023.

36.    On Thursday August 24, 2023, Hernandez was called into a meeting to go over her future orders. At the end of the meeting Hernandez was terminated, purportedly due to her error regarding the order.

37.    At the conclusion of the meeting Hernandez was presented with a severance agreement that included a confidentiality provision and non-disparagement provision in violation of her rights under the National Labor Relations Act.

38.    Following her termination, Technetics offered a monetary settlement in exchange for a release of claims but failed to make the payment as agreed. Hernandez reasonably relied on the prospect of resolution and refrained from immediately pursuing formal legal action.

39.   This failure to follow through on the settlement has caused additional delay and harm to Hernandez and serves as an equitable basis to toll or extend any applicable statute of limitations.

## COUNT I
## Discrimination in Employment on the Basis of Race, in Violation of Title VII

40.   Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 38, inclusive, as though fully set forth herein.

41.   Title VII of the Civil Rights Act (42 U.S.C. § 2000e–2) makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42.   Plaintiff is an individual of Cuban descent and is therefore a member of a protected class under Title VII.

43.   Plaintiff was qualified for the position of Buyer at Technetics and performed all duties in a satisfactory manner.

44.   Defendant, through its supervisors, subjected Plaintiff to adverse employment actions, including but not limited to inadequate training, termination, humiliation, and harassment.

10

45.    These adverse actions were motivated, at least in part, by Plaintiff's race.

46.    Defendant did not have a legitimate non-discriminatory reason(s) for the termination of Plaintiff.

47.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages, loss of benefits, emotional distress, humiliation, and other damages.

48.    Defendant's conduct was willful and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

49.    Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Back pay;

c) Reasonable Attorney's fees;

d) Costs and expenses of suit; and

e) Such other and/or further relief that the Court may deem proper and just.

## COUNT II
## Discrimination in Employment on the Basis of National Origin, in Violation of Title VII

50. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 48, inclusive, as though fully set forth herein.

51. Title VII of the Civil Rights Act (42 U.S.C. § 2000e–2) makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

52. Plaintiff is an individual of Cuban descent and is therefore a member of a protected class under Title VII.

53. Plaintiff was qualified for the position of Buyer at Technetics and performed all duties in a satisfactory manner.

54. Defendant, through its supervisors, subjected Plaintiff to adverse employment actions, including but not limited to inadequate training, termination, humiliation, and harassment.

55. These adverse actions were motivated, at least in part, by Plaintiff's national origin.

56.    Defendant did not have a legitimate non-discriminatory reason(s) for the termination of Plaintiff.

57.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages, loss of benefits, emotional distress, humiliation, and other damages.

58.    Defendant's conduct was willful and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

59.    Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the

following relief:

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Back pay;

c) Reasonable Attorney's fees;

d) Costs and expenses of suit; and

e) Such other and/or further relief that the Court may deem proper and just.

## COUNT III
## Discrimination in Employment on the Basis of Sex, in Violation of Title VII

60.     Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 58, inclusive, as though fully set forth herein.

61.     Title VII of the Civil Rights Act (42 U.S.C. § 2000e–2) makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

62.     Plaintiff is an individual of a gay woman and is therefore a member of a protected class under Title VII.

63.     Plaintiff was qualified for the position of Buyer at Technetics and performed all duties in a satisfactory manner.

64.     Defendant, through its supervisors, subjected Plaintiff to adverse employment actions, including but not limited to inadequate training, termination, humiliation, and harassment.

65.     These adverse actions were motivated, at least in part, by Plaintiff's national origin.

66.     Defendant did not have a legitimate non-discriminatory reason(s) for the termination of Plaintiff.

14

67.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages, loss of benefits, emotional distress, humiliation, and other damages.

68.     Defendant's conduct was willful and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

69.     Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Back pay;

c) Reasonable Attorney's fees;

d) Costs and expenses of suit; and

e) Such other and/or further relief that the Court may deem proper and just.

## COUNT IV
## Discrimination in Employment on the Basis of Race in Violation of The Florida Civil Rights Act (FCRA)

70.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 68 as though fully set forth herein.

71.    Fla. Stat. Ann. § 760.01 provides, in pertinent part: "(1) Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992.' (2) The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color…national origin…and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state. (3) The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."

72.    Fla. Stat. § 760.07 provides, in pertinent part: "Any violation of any Florida statute that makes unlawful discrimination because of race [and/or] color in the area[] of…employment…gives rise to a cause of action for all relief and

damages described in s. 760.11(5), unless greater damages are expressly provided for."

73.    Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

74.    Fla. Stat. Ann. § 760.11 (5) further provides, in pertinent part: "The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs…"

75.    Consistent with the analytical framework used to determine whether a Title VII, Plaintiff is entitled to punitive damages, Plaintiff is entitled to recover punitive damages under his FCRA claim, in that: (1) Defendant acted with knowledge that its actions may have violated federal and/or state law, or in the face of a perceived risk that its actions would violate federal and/or state law; (2) liability may be imputed to Defendant as the employees of Defendant involved in the unlawful action were acting within the scope of their employment at all times

17

material; and (3) the Defendant did not engage in good faith efforts to comply with Title VII.

76. As a direct, foreseeable and proximate result of Defendant's violation of The Florida Civil Rights Act (FCRA), Plaintiff has suffered, and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

77. Plaintiff has retained the legal services and representation of the undersigned, and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Punitive Damages;

c) Back pay;

d) Reasonable Attorney's fees;

e) Costs and expenses of suit; and

f) Such other and/or further relief that the Court may deem proper and just.

## COUNT V
## Discrimination in Employment on the Basis of National Origin, in Violation of The Florida Civil Rights Act (FCRA)

78.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 76 as though fully set forth herein.

79.    Fla. Stat. Ann. § 760.01 provides, in pertinent part: "(1) Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992.' (2) The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color…national origin…and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state. (3) The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."

80.    Fla. Stat. § 760.07 provides, in pertinent part: "Any violation of any Florida statute that makes unlawful discrimination because of race [and/or] color in the area[] of…employment…gives rise to a cause of action for all relief and

damages described in s. 760.11(5), unless greater damages are expressly provided for."

81.    Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

82.    Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

83.    Fla. Stat. Ann. § 760.11 (5) further provides, in pertinent part: "The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs…"

84.     Consistent with the analytical framework used to determine whether a Title VII, Plaintiff is entitled to punitive damages, Plaintiff is entitled to recover punitive damages under his FCRA claim, in that: (1) Defendant acted with knowledge that its actions may have violated federal and/or state law, or in the face of a perceived risk that its actions would violate federal and/or state law; (2) liability may be imputed to Defendant as the employees of Defendant involved in the unlawful action were acting within the scope of their employment at all times material; and (3) the Defendant did not engage in good faith efforts to comply with Title VII.

85.     As a direct, foreseeable and proximate result of Defendant's violation of The Florida Civil Rights Act (FCRA), Plaintiff has suffered and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

86.     Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Punitive Damages;

c) Back pay;

d) Reasonable Attorney's fees;

e) Costs and expenses of suit; and

f) Such other and/or further relief that the Court may deem proper and just.

## COUNT VI
## Discrimination in Employment on the Basis of Sex, in Violation of The Florida Civil Rights Act (FCRA)

87.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 85 as though fully set forth herein.

88.    Fla. Stat. Ann. § 760.01 provides, in pertinent part: "(1) Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992.' (2) The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color…sex...and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state. (3) The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general

purposes stated in this section and the special purposes of the particular provision involved."

89.    Fla. Stat. § 760.07 provides, in pertinent part: "Any violation of any Florida statute that makes unlawful discrimination because of gender in the area of…employment…gives rise to a cause of action for all relief and damages described in s. 760.11(5), unless greater damages are expressly provided for."

90.    Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

91.    Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

92.    Fla. Stat. Ann. § 760.11 (5) further provides, in pertinent part: "The judgment for the total amount of punitive damages awarded under this section to

an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs…"

93.     Consistent with the analytical framework used to determine whether a Title VII, Plaintiff is entitled to punitive damages, Plaintiff is entitled to recover punitive damages under his FCRA claim, in that: (1) Defendant acted with knowledge that its actions may have violated federal and/or state law, or in the face of a perceived risk that its actions would violate federal and/or state law; (2) liability may be imputed to Defendant as the employees of Defendant involved in the unlawful action were acting within the scope of their employment at all times material; and (3) the Defendant did not engage in good faith efforts to comply with Title VII.

94.     As a direct, foreseeable and proximate result of Defendant's violation of The Florida Civil Rights Act (FCRA), Plaintiff has suffered and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

95.     Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

24

a) Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

b) Punitive Damages;

c) Back pay;

d) Reasonable Attorney's fees;

e) Costs and expenses of suit; and

f) Such other and/or further relief that the Court may deem proper and just.

## DEMAND FOR A JURY TRIAL

Plaintiff, Mirla "Millie" Hernandez, demands a trial by a jury of all issues triable as a right by jury.

Dated this 9th day of September, 2025.

[REMINDER OF PAGE LEFT INTENTIONALLY BLANK]

Respectfully submitted,

Spire Law, PLLC
2572 W. State Road 426,
Suite 2088
Oviedo, Florida 32765

By: */s/ Jesse I. Unruh*
Jesse I. Unruh, Esq.
Florida Bar No. 93121
Monica Monsalve-Burr
Florida Bar No. 1031295
jesse@spirelawfirm.com
monica@spirelawfirm.com
margarita@spirelawfirm.com
filings@spirelawfirm.com
*Attorneys for Plaintiff*